JoNEs, Chief Judge,
delivered the opinion of the court:
This is a suit to recover an alleged overpayment in excess profits taxes for the taxpayer’s fiscal year ending November 30, 1945. The controversy centers on the tax consequences of a plan for additional profit-sharing compensation for plaintiff’s officers and key employees.
The primary question presented is whether plaintiff, an accrual basis taxpayer, is entitled to a deduction in its fiscal year 1945 for contributions made or accrued in that year to several profit-sharing trusts established for its officers and key employees. Or, in the alternative, is the taxpayer entitled to deduct in its fiscal year 1945 the amounts (previously contributed by it to the trusts) which either accrued for distribution or were actually distributed to officers and key employees by the trustee during the fiscal year 1945.
In April 1942, plaintiff adopted a profit-sharing plan for the benefit of its officers and key management personnel. Under this plan, a prescribed percentage of plaintiff’s profits each year, beginning with the fiscal year 1942 and continuing through the fiscal year 1945, was deposited in irrevocable tnists for distribution to plaintiff’s executives over a period of several succeeding years. The purpose of the plan was to encourage the plaintiff’s executives to remain in its employment by guaranteeing them additional compensation for future years, and to furnish an incentive for their best efforts in the successful continuation of plaintiff’s business.
Pursuant to this plan of providing additional compensation for its officers and key management personnel, the taxpayer established a series of trusts during the years 1942-1945, inclusive. In general, each of the trust agreements provided that the plaintiff would irrevocably contribute specified percentages of annual profits to the trusts for the benefit of named officers and key personnel; that each person’s rights in the trust fund would vest at the time the contribution was made; and that each beneficiary’s specified share of the trust fund would, in all events, be paid to him unless he voluntarily chose to relinquish such shai’e by resigning from plaintiff’s *837 employment prior to a fixed date, in which case the remaining beneficiaries would become entitled to his share.
■ All amounts contributed by the plaintiff to the trusts from its profits of the fiscal years 1942-1945 were distributed to the beneficiaries in accordance with the terms of the trusts during the calendar years 1944-1950. The reasonableness of the total compensation is not disputed.
In its income and declared value excess profits tax returns for fiscal year 1945 the plaintiff deducted from gross income the amount contributed to the trusts out of the profits of the fiscal year 1945, as additional compensation paid to the employee-beneficiaries. After an examination of these returns, the Commissioner of Internal Revenue disallowed this amount as a deduction in the fiscal year 1945 or any other year, and allowed no deduction to the taxpayer for the fiscal year 1945 or any other year on account of contributions by the taxpayer to, or distribution by the trustee from, any of the trust funds.
Prior to the adoption of the Revenue Act of 1942, payments made to deferred compensation plans by employers could be deducted either as ordinary and necessary business expenses under § 23 (a) of the Internal Revenue Code of 1939, or under the specific deduction provisions of § 23 (p). In 1942, § 23 (p) was amended by § 162(b) of the Revenue Act of 1942, c. 619, 56 Stat. 798, 863. The effect of this amendment was to make § 23 (p) the exclusive section for deductions claimed as a result of deferred compensation plans. Tavannes Watch Co. v. Commissioner, 176 F. 2d 211 (2d Cir. 1949) ; Times Publishing Co. v. Commissioner, 13 T.C. 329, aff’d per curiam, 184 F. 2d 376 (3d Cir. 1950).
The 1942 amendment to §23(p) was primarily designed to grant tax advantages to encourage the growth of pension, profit-sharing, and stock-bonus plans which met certain coverage and nondiscrimination requirements set forth in § 165(a). Thus, under subsections (A), (B), and (C) of § 23 (p), Congress permitted contributions made by employers to the so-called “qualified” plans to be deducted in the taxable year .when paid. Since subsections (A), (B), and (C) are admittedly not applicable because the trusts do not *838 qualify under § 165(a), the deduction claimed in the suit at bar is controlled by subsection (D) of § 23 (p) (1).
Subsection (D) of §23 (p) (1) provides that (1) contributions paid by an employer to or under a stock-bonus, pension, profit-sharing, or annuity plan or (2) compensation paid or accrued on account of any employee under a plan deferring the receipt of such compensation shall be deductible:
In the taxable year when paid, if the plan is not one included in paragraphs (A), (B), or (C), if the employees’ rights to or derived from such employer’s contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid. [Emphasis supplied.]
Plaintiff does not dispute the fact that the rights of any beneficiary here could be forfeited at the time the employer’s contribution was paid to the trust. It contends, however, that the rights of the employees as a group under the “irrevocable” trusts involved in this case were not forfeitable to the employer; and that this is sufficient “nonforfeitability” to satisfy the requirement of the statute and to permit the plaintiff to claim a deduction for contributions paid to the trusts in 1945. We are unable to agree. It seems evident from the legislative history and from a common sense reading of the statute that the phrase “employees’ rights” refers to the rights of the individual beneficiaries. Times Publishing Co. v. Commissioner, supra; William M. Bailey Co. v. Commissioner, 15 T.C. 468, aff'd per curiam, 192 F. 2d 574 (3d Cir. 1951); H. S. D. Co. v. Kavanagh, 88 F. Supp. 64 (E.D.Mich. 1949), rev'd on other grounds, 191 F. 2d 831 (6th Cir. 1951).
The plaintiff next contends that, if it is not entitled to deduct the contributions paid to the trusts in 1945, it is entitled to deduct in 1945 the amounts of compensation which accrued for payment, or which were actually paid, to the employee-beneficiaries in that year. As to the amounts of compensation which merely accrued in the fiscal year 1945, a deduction could not be allowed in that year in the face of a clear statutory provision that such compensation shall be deductible only in the taxable year when “paid.” Section 28(p)(l)(D).
*839 A closer question is presented by the taxpayer’s claim for a deduction for the amount of compensation actually paid to the employee-beneficiaries in the fiscal year 1945.
On the one hand, the Treasury Department has interpreted subsection (D) of §23 (p) (1) to mean that “If an amount is paid during the taxable year but the rights of the employee therein are forfeitable at the time the amount is paid, no deduction is allowable for such amount for any taxable year.” U.S. Treas. Reg. Ill, § 29.23(p)-ll, as amended, T.D. 5666, 1948-2 Cum. Bull. 46. [Emphasis supplied.]
Opposed to the Treasury’s interpretation are the plain wording of the statute and the statute’s legislative history.[1] It is certain that Congress enacted the 1942 amendment to § 23 (p) in order to limit the tax advantages available under that section to those deferred compensation plans which possess extended coverage and nondiscriminatory features.[2] This policy was continued under the Internal Revenue Code of 1954.[3] Conversely, it intended to deny tax advantages to nonqualifying plans. But it is equally clear that Congress did not intend to stamp out or penalize the nonqualifying plan by completely disallowing the deduction of ordinary and necessary business expenses resulting from such a plan.
The language of the statute bears out this construction. Section 23 (p) (1) (D) provides that “compensation” paid an employee under a nonqualifying plan (as distinct from a “contribution” paid by an employer to a stock-bonus, pension, profit-sharing, or annuity plan) [4] shall be deductible:
In the taxable year when paid * * *, if the employees’ rights to or derived from * * * such compensation are nonforfeitable at the time the * * * compensation is paid. [Emphasis supplied.]
*840 No one will deny that the compensation involved in the case at bar was nonforfeitable at the time it was paid to employee-beneficiaries. The defendant, however, takes the position that the phrase, “in the taxable year when paid,” should read “in the taxable year when paid by the employer.” The defendant then argues that if the compensation is paid by a trustee it is not compensation “paid by the employer,” and is therefore not deductible. The short answer to this is that the statute makes no such provision.
In fact, the wording of §23(p) (1) strongly indicates a congressional anticipation that “compensation” would be paid by a trustee, and a congressional intention that compensation paid by a trustee should be deductible. In the first paragraph of § 28 (p) (1) Congress refers to “contributions” “paid by an employer,” whereas “compensation” is mentioned, significantly we think, without any reference to the person who hands the compensation over to the employee.
The defendant has directed our attention to an attempt which was made, in the course of adopting the 1954 Code, to change § 28(p) (1) (D). H.R. 8330, 83d Cong., 2d Sess. § 403(a) (5) (1954), would have granted the employer a deduction for contributions to nonqualified plans “in the taxable year when the amount is actually distributed or made available to a distributee * * The defendant views the failure to enact this provision as evidence that Congress was satisfied with the existing law and that the amended Treasury Regulation interpreting § 23 (p) (1) (D) is in accord with the intention of Congress. The court does not find in this failure to approve the proposed revision of § 23 (p) (1) (D) the significance attributed to it by the defendant. This proposed revision would have done more than simply reverse that interpretation ; it would have permitted a deduction at the time the compensation was distributed, even though the right of the employee was nonforfeitable at the time the contribution was made by the employer to the trust. It is therefore difficult, if not impossible, to discover what Congress was approving or disapproving by this action.
The court is persuaded that the regulation is contrary to the clear provision of § 23(p) (1) (D) insofar as it denies plaintiff a deduction for the amount of compensation paid *841 the employee-beneficiaries in fiscal year 1945. A regulation is for the interpretation and application of a statute, but it cannot take away rights or privileges which the Congress has given. '
The court holds that the plaintiff is entitled to a deduction in 1945 for the amounts of compensation which were actually paid out of the trusts to the employee-beneficiaries in that year.[5]
A second question presented in this case relates to the computation of the taxpayer’s accumulated earnings and profits, and thus of its invested capital, as of the first day of its fiscal year 1945, for excess profits tax purposes.
For the fiscal year 1945, the taxpayer computed its excess profits credit under the invested capital method in § 718(a) (4) of the Internal Revenue Code of 1939. .
In its tax returns for the fiscal years 1942,1943, and 1944, the taxpayer had claimed as deductions its contributions to the trusts from the profits of such years, in the total amount of $130,400. In 1955, the Commissioner of Internal Revenue disallowed the deductions claimed for the fiscal years 1942, 1943, and 1944 for contributions to the trusts. Deficiencies totaling $164,844.25 were duly assessed and paid.
In computing the taxpayer’s invested capital credit for its fiscal year 1945, the Commissioner reduced the taxpayer’s accumulated earnings and profits at the beginning of such year by the amount of the total net tax deficiency of $164,844.25 determined by him for the years 1942-1944, which thereby reduced the taxpayer’s excess profits credit for such year. Also, in computing such credit, the Commissioner did not increase its earnings and profits at the beginning of the fiscal year 1945 by the amount of the claimed deductions of $130,400 as contributions to the trusts; nor did he otherwise include in the taxpayer’s invested capital at the beginning of fiscal year 1945 any part thereof.
During the fiscal year 1941, the taxpayer sustained a bad debt loss on the basis of which it filed a claim for refund of *842 1941 income and excess profits taxes. In March 1957, the Commissioner allowed such claim. As a result, the taxpayer’s previously determined tax liability for 1941 was reduced in the amount of $47,161.69. The Commissioner, however, has made no adjustment of the taxpayer’s invested capital for any of the fiscal years 1941-1945 on account of such tax reduction.
Section 718 of the Internal Bevenue Code of 1939[6] provides that there shall be included, together with other amounts, in taxpayer’s equity invested capital “the accumulated earnings and profits as of the beginning of such taxable year.”
Treasury Begulations 112, § 35.718-2, states:
The term “accumulated earnings and profits” is not defined in the Internal Bevenue Code. * * * In computing accumulated earnings and profits as of the beginning of the taxable year, a taxpayer keeping its books and making its income tax returns on the accrual basis shall subtract the income and excess profits taxes for the preceding taxable year. * * *
Section 35.718-2 of the regulation also provides that “the concept of ‘accumulated earnings and profits’ for the purpose of the excess profits tax is the same as for purposes of the income tax.”
Section 41 of the Internal Bevenue Code of 1939 provides:
The net income shall be computed upon the basis of the taxpayer’s annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income.
The issue here raised is whether the taxes subtracted, pursuant to Treasury Begulations 112, § 35.718-2, are those finally determined by the Commissioner or those reported by the taxpayer on the returns. The taxpayer’s failure to subtract the amount of tax liability finally determined by the Commissioner in computing accumulated earnings and profits *843 increases the amount of the taxpayer’s invested capital, and thus its excess profits credit, and thereby reduces its taxes.
The Commissioner held that the amount of the taxpayer’s income and excess profits tax liabilities for the years 1942, 1943, and 1944, as finally determined, must be accrued and deducted in each respective year in finally computing the amount of taxpayer’s “accumulated earnings and profits” as of the first day of fiscal year 1945. The taxpayer’s argument to the contrary is based on the well-established rule that an accrual basis taxpayer may not deduct the amount of a contested liability as an expense for income tax purposes until the contest is concluded and the amount of the liability is finally determined.
The Tax Court has considered the question, and has held that for the purposes of Treasury Regulation 112, § 35.718-2 (a), income and excess profits taxes must be accrued by an accrual basis taxpayer in the year in which they arose, regardless of whether its liability therefor became definite and ascertainable in amount in that year or a subsequent year. Stern Brothers & Co., 16 T.C. 295 (1951).
In reaching its conclusion, the Tax Court acknowledged the recognized rule established in Dixie Pine Co. v. Commissioner, 320 U.S. 516, and Security Mills Co. v. Commissioner, 321 U.S. 281, that a tax which is being contested does not accrue until liability therefor is finally determined; but the Tax Court held that such a rule was inapplicable when the purpose of the accrual of the tax was to reflect the amount of the corporation’s accumulated earnings and profits at the beginning of the taxable year for invested capital purposes. The Tax Court pointed out that it is necessary to distinguish the accrual of federal income and excess profits taxes called for by Treasury Regulations 112, § 35.718-2(a), from the more usual accrual for purposes of deduction from, or inclusion in, income; that the accrual of these taxes results in no deductible expenses in computing taxable income; and that if accumulated earnings and profits at the start of any taxable year are to show the true financial status of an accrual basis taxpayer, an adjustment must be made for income and excess profits taxes arising the preceding year. “Thus the *844 accrual called for by this subsection of the Regulations is simply an adjustment to accumulated earnings.”
The Tax Court noted that:[7]
To hold otherwise and invoke the rule that a contested tax is accruable -only in the taxable year when liability is finally determined would completely defeat the purpose of the Regulation. Thus by simply contesting liability for income and excess profits taxes a taxpayer could postpone their accrual until after the year in which-they arose, and its accumulated earnings and profits for the succeeding year would never be diminished by the amount of these taxes. * * * We can not think that such á result was intended by Congress.
We agree with the reasoning of the Tax Court in the Stern Brothers & Co. case.[8] Accordingly, the court holds that the Commissioner of Internal Revenue may adjust the taxpayer’s excess profits credit at the beginning of the fiscal year 1945 by reducing the taxpayer’s accumulated earnings and profits by the amount of the tax deficiencies for the fiscal years 1942-1944, inclusive. Likewise, the taxpayer is entitled to the benefit of the adjustment for invested capital purposes of the amount of taxes allowed as a refund, as a result of the partial allowance for a bad debt claim.
Plaintiff is entitled to recover, together with interest thereon as provided by law with the amount of recovery to be determined pursuant to Rule 38(c).
It is so ordered.
Wilbur K. Miller, Circuit Judge, sitting by designation; Laramore, Judge, and Madden, Judge, concur.
Whitaker, Judge, dissents.
FINDINGS OF FACT
The court, having considered the evidence, the briefs, and argument of counsel, and the report of Trial Commissioner Mastín G. White, makes the following findings of fact:

*845
General

1. (a) The Russell Manufacturing Company (hereinafter referred to in the findings as “the plaintiff”) is, and at all times here material was, a Connecticut corporation with its principal place of business at Middletown in that State. The plaintiff is a manufacturer of webbing, automobile friction material, and narrow fabric textiles. During the years 1942-1945, it manufactured .30 and .50 caliber machine-gun belts for the United States Government.
(b) At all times material to this litigation, the plaintiff kept its books and filed its tax returns on an accrual basis for fiscal years that ended on November 30 of each calendar year.
2. The plaintiff is the sole owner of the claims asserted in this litigation, and has made no assignment of such claims or any part thereof or interest therein. No action on such claims has been had before either House of Congress or in any of the executive departments, except as set forth in these findings.

Facts regarding contributions to and distributions from trusts established by 'plaintiff for benefit of its personnel

3. (a) On April 16,1942, the plaintiff entered into a contract with a union representing its factory employees who' were paid on an hourly or piecework basis. Under this contract, the plaintiff agreed (among other things) to pay such employees extra compensation based on percentages of the plaintiff’s annual profits, as follows:
After deduction of the sum of $300,000 from .the net profits of the Company, the following scale of percentages of the balance of the net profits shall be the amount payable to all eligible employees as extra compensation:

(b) The plan mentioned in paragraph (a) of this finding for the payment of extra compensation to employees who' were paid on an hourly or piecework basis continued to'be in" *846 effect during the plaintiff’s fiscal year that ended on November 80, 1945.
4. In April 1942, the plaintiff also adopted a plan, similar to the one outlined in finding 3, whereby extra compensation was provided on a profit-sharing basis for all its salaried employees, exclusive of the plaintiff’s officers and other key management personnel. This plan continued to be in effect during the fiscal year 1945. The average number of salaried employees on the plaintiff’s payroll and participating in such plan during each of the years 1942-1945 was as follows:

5. (a) In addition, the plaintiff in April 1942 adopted a plan of additional compensation for the exclusive benefit of its officers and other key management personnel. Under this plan, a prescribed percentage of the plaintiff’s profits each year, beginning with the fiscal year 1942 and continuing through the fiscal year 1945, was deposited in irrevocable trusts for distribution to the beneficiaries (the key executives previously mentioned) over a period of several succeeding years. The Hartford-Connecticut Trust Company was appointed trustee of the respective trusts.
(b) The plaintiff’s business was of such a chai’acter that the continuing services of technically skilled, efficient, and experienced executives were important to its success. The purpose of the establishment of the plan mentioned in paragraph (a) of this finding was to influence the plaintiff’s officers and other key management personnel to remain in the employment of the plaintiff by providing additional compensation in future years, and also to furnish an incentive for such persons to exert their best efforts to the successful continuation of the plaintiff’s business.
6. Pursuant to its need for, and desire to retain the services of, experienced officers and other key management personnel, as mentioned in finding 5 (b), the plaintiff on February 24, 1943 entered into 3-year employment contracts with George M. Williams, its president and chairman of the board of directors, Carl J. Sherer, its first vice president, treasurer, *847 and temporary general manager, and Amor P. Smith, its second 'vice president and secretary. These three chief executive officers had previously served the plaintiff under contracts which were due to expire on February 28, 1943. The new contract with Mr. Williams recited the fact that he was then on leave of absence with the Yultee Aircraft Corporation, and was assisting in the war effort by helping that company increase its output of military and naval planes. The new contract contained no agreement as to the amount of Mr. Williams’ compensation, but provided that his compensation should be determined upon his return to active employment with the plaintiff. The new contracts with Messrs. Sherer and Smith, in addition to specifying base salaries for them, provided that each would participate in a designated percentage of the plaintiff’s annual earnings for the fiscal years ending on November 30, 1943, on November 30, 1944, and on November 30,1945. The percentages of profits which the contracts provided would be made available for the benefit of Messrs. Sherer and Smith were the same as the amounts which the plaintiff agreed to contribute, and did contribute, for their benefit under the terms of Trusts B, C, D, E, F, and G, as hereinafter set forth in findings 7-11.
7. (a) Pursuant to the plan of providing additional compensation for its officers and other key management personnel (see finding 5), the plaintiff established Trust F on January 29, 1945, covering a prescribed percentage of profits for the fiscal year that ended on November 30, 1945. The trust agreement, in summary, provided that the plaintiff would irrevocably contribute to the trustee a part of its profits for the benefit of certain named persons; that such persons’ rights in the trust fund would vest at the time when the contribution was made; and that the trust fund would, in all events, be paid to the beneficiaries unless a beneficiary voluntarily chose to relinquish his share of the fund by resigning from the plaintiff’s employment before December 1, 1947. It was further provided that if any beneficiary did resign voluntarily before December 1, 1947, the remaining beneficiaries would be entitled to receive the share thus voluntarily relinquished. Other pertinent provisions of the trust agree *848 ment establishing Trust F are described or set out in the subsequent paragraphs of this finding.
(b) The beneficiaries of the trust were to participate in 7.8 percent of the plaintiff’s net earnings in excess of $300,000 but not exceeding $700,000 during the fiscal year that ended on November 30, 1945. The plaintiff agreed to deposit with the trustee the profits to which the beneficiaries were entitled.
(c) The names of the trust beneficiaries, the titles of their positions, and the respective percentages of the plaintiff’s profits during the fiscal year 1945 to which they were entitled are set out below:

(d) The trustee was empowered to invest the funds and to pay the income from the trust currently to the beneficiaries named therein not less often than twice each calendar year.
(e) Paragraph 4 of the trust agreement provided as follows:
Commencing December 1, 1947, the principal of the fund shall thereafter accrue for the benefit of the then beneficiaries of the fund in proportion to their respective equities in the fund, as shown on said Schedule A, at the rate of one thirty-sixth (%q) thereof per month, subject, however, to the other provisions hereof.
(f) Paragraph 5 of the trust agreement provided as follows:
At the expiration of three years from December 1, 1945, one third (%) of the principal of the fund shall be *849 distributed by the Trustee absolutely and free of trust among the then beneficiaries of the fund, in proportion to their said respective equities therein; and at the expiration of four years from said date one half (%) of the remaining principal of the fund shall be so distributed ; and likewise, at the expiration of five years from said date, the balance of the principal of the fund shall be so distributed, at which time the trust shall cease and terminate.
(g) Paragraph 6 of the trust agreement provided as follows:
In the event that any beneficiary listed in said Schedule A shall voluntarily leave the employ of the Company before December 1, -1947, except for ill health, he shall cease (except in the event of death as hereinafter provided) to be a beneficiary hereunder and shall thereupon and thereafter be entitled to no benefits, neither interest nor principal, from this trust; if any beneficiary shall leave the employ of the Company within two years from December 1, 1945, because of ill health and shall not engage in any business or manufacturing activities, he shall continue to receive distribution of interest and principal as a beneficiary hereunder in accordance with the terms of this indenture.
(h) If any beneficiary left the employ of the company on or after December 1, 1947, other than by discharge or requested resignation, and did not thereafter engage in business, he was entitled to continue as a beneficiary under the trust. If he did engage in business, he was entitled to a proportionate share of the trust fund which had accrued for payment to him up to the time when he commenced in business.
(i) The executor or administrator of any beneficiary who died after November 30,1945 was entitled to such beneficiary’s full share of the trust fund, both accrued and unaccrued, including interest.
(j) A beneficiary who was discharged or whose resignation was requested after November 30, 1945, was entitled to his full share of the trust fund, both accrued and unaccrued.
(k) The executor or administrator of a beneficiary who died, or a beneficiary who was discharged or whose resignation was requested or who retired because of ill health, prior to November 30,1945, was entitled to a share of the principal *850 trust fund contributed for his benefit in the proportion which the months of his employment during the fiscal year 1945 bore to the whole year, together with his proportionate share of the interest received by the trustee up to the date of such death or separation from employment.
(l) Paragraph 9 of the trust agreement provided as follows:
If any beneficiary or beneficiaries shall forfeit his or their respective interests in this fund by reason of any of the foregoing provisions, the amount or amounts so forfeited shall be added to the shares of the then remaining beneficiaries in proportion to their respective equities in the trust fund.
(m) Paragraph 11 of the trust agreement provided as follows:
The provisions of this trust shall cover the Company’s fiscal year commencing December 1, 1944, and ending November 30, 1945, and these provisions shall be irrevocable by the Company, and the Company shall in no event have power to change any of the terms and conditions hereof, or to x’eceive by distribution any portion of the fund, either principal or interast.
8. (a) Pursuant to the plan of providing additional compensation for its officers and other key management personnel (see finding 5), the plaintiff also established Trust G on January 29,1945. Trust G, like Trust F (see finding 7), covered a prescribed percentage of the plaintiff’s profits for the fiscal year that ended on November 30,1945; and the beneficiaries of Trust G were George M. Williams, Carl J. Sherer, and Amor P. Smith, who were also beneficiaries of Trust F. Under the provisions of Trust G, which were similar to those of Trust F, the plaintiff was required to contribute irrevocably to the trustee a prescribed part of its profits for the benefit of the persons named in the agreement. Such persons’ rights in the trust fund vested at the time when the contribution was made; and, in all events, the trust fund was to be paid to the beneficiaries unless they voluntarily chose to relinquish their respective shares by resigning from the plaintiff’s employment before the end of the fiscal year 1945. Any share voluntarily relinquished was to be paid to the other beneficiaries. Other pertinent provisions of the trust *851 agreement establishing Trust G are described or set out in the succeeding paragraphs of this finding.
(b) The plaintiff was to contribute to the trustee 4 percent of the plaintiff’s profits in excess of $300,000 but not exceeding $700,000 for the fiscal year 1945. Mr. Sherer was to receive 2% percent and Mr. Smith was to receive 1% percent of such profits. Mr. Williams was on leave of absence (see finding 6) when Trust G was established, and no percentage of the plaintiff’s profits for the fiscal year 1945 was designated as additional compensation for him.
(c) The funds contributed by the plaintiff were to be invested by the trustee; and interest was payable currently to the beneficiaries at least twice each calendar year, and at such times as the trustee might determine.
(d) Paragraph 4 of the trust agreement provided as follows:
Commencing December 1, 1945, the principal of the fund shall thereafter accrue for the benefit of the then beneficiaries of the fund in proportion to their respective equities in the fund, as shown on said Schedule A, at the rate of one sixtieth (%0) thereof per month, subject, however, to the other provisions hereof.
(e) Paragraph 5 of the trust agreement provided as follows:
At the expiration of one year from December 1,1945, one fifth (%) of the principal of the fund shall be distributed by the Trustee absolutely and free of trust among the then beneficiaries of the fund, in proportion to their said respective equities therein; and at the expiration of two years from said date one fourth (%) of the remaining principal of the fund shall be so distributed ; and likewise, at the expiration of three years from said date one third (%) of _the remaining principal of the fund shall be so distributed; and likewise, at the expiration of four years from said date one half (y2) of the remaining principal of the fund shall be so distributed; and likewise, at the expiration of five years ¿rom said date the balance of the principal of the fund shall be so distributed, at which time the trust shall cease and terminate.
(f) Paragraph 6 of the trust agreement provided as follows:
*852 In the event that any beneficiary listed in said Schedule A shall voluntarily leave the employ of the Company before December 1, 1945, except for ill health, he shall cease (except in the event of death as hereinafter provided) to be a beneficiary hereunder, and shall thereupon and thereafter be entitled to no benefits, neither interest nor principal, from this trust; if any beneficiary shall leave the employ of the Company before December 1, 1945, because of ill health and shall not engage in any business or manufacturing activities, he shall continue to receive distribution of interest and principal as a beneficiary hereunder in accordance with the terms of this indenture.
(g) Paragraph 7 of the trust agreement provided as follows:
If any named beneficiary leaves the employ of the Company after December 1, 1945, and before the principal of the fund is entirely distributed, because of ill health or for any other reason (other than by discharge or by resignation requested by the Company) and he shall not thereafter engage in any business or manufacturing activityj he shall continue as a beneficiary hereunder; but in the event that he shall thereafter engage in any business or manufacturing activity, he shall thereupon be entitled only to his then accrued undistributed share of principal of the trust and his share of interest received and not distributed on a basis of accrual of principal at the rate of one sixtieth (%0) of his proportionate share per month commencing after December 1, 1945, to be forthwith distributed to him by the Trustee.
(h) If a beneficiary died or was discharged or was requested to resign after November 30,1945, he or his executor was entitled to his full share of the trust fund, together with interest.
(i) If a beneficiary died or was discharged or was requested to resign before November 30,1945, such beneficiary or his executor was entitled to share in the principal trust fund contributed for his benefit in the proportion which the months of his employment during the fiscal year 1945 bore to the whole year, together with his proportionate share of the interest received by the trustee up to the date of such death or separation from employment.
*853 (j) Paragraph 9 of the trust agreement provided as follows:
If any beneficiary or beneficiaries shall forfeit his or their interest or interests in this fund by reason of any of the foregoing provisions, the amount or amounts so forfeited shall be added to the share of the remaining beneficiary or beneficiaries. If all of the beneficiaries hereunder shall forfeit their respective interests in this fund by reason of any of the foregoing provisions, the amount so forfeited shall be added to the shares of the beneficiaries under the indenture of trust covering a profit-sharing plan entered into by the Company naming the Trustee herein, dated January 29th, 1945, for the benefit of certain key executives of the Company described on Schedule A attached to said indenture, in proportion to their respective equities in said trust fund, excluding, however, the beneficiary or beneficiaries under this trust indenture who shall have forfeited his or their respective interest or interests in this fund.
(k) Paragraph 11 of the trust agreement provided as follows:
The provisions of this trust shall cover the Company’s fiscal year commencing' December 1, 1944, and ending November 30, 1945, aim. these provisions shall be irrevocable by the Company, and the Company shall in no event have power to change any of the terms and conditions hereof, or to receive by distribution any portion of the fund, either principal or interest.
9. (a) The beneficiaries of Trust F (see finding 7) were also named (along with G. E. Goundrey, the plaintiff’s comptroller and head of its Accounting Department during the years 1942-1944) as the beneficiaries of Trusts A, B, and D, which provided benefits similar to those provided by Trust F. Trust A, which was established by the plaintiff on May 26,1942, gave the beneficiaries a share of the plaintiff’s profits for the fiscal year 1942. Trust B, which was established by the plaintiff on March 13,1943, gave the beneficiaries a share of the plaintiff’s profits for the fiscal year 1943. Trust D, which was established by the plaintiff on February 29,1944, gave the beneficiaries a share of the plaintiff’s profits for the fiscal year 1944.
*854 (b) The required contributions to Trusts A, B, and D were made by tbe plaintiff after the establishment of those trusts.
(c) Trusts A, B, and D contained provisions comparable to paragraphs 4 and 5 of Trust F (see paragraphs (e) and (f) of finding 7). Under such provisions, the principal of Trusts A, B, and D commenced to accrue for the benefit of the beneficiaries on December 1, 1944, on December 1, 1945, and on December 1, 1946, respectively, at the rate of one-thirty-sixth (%6) per month. At the expiration of three years from December 1, 1942, from December 1, 1943, and from December 1,1944, one-third of the principal of Trusts A, B, and D, respectively, was to be distributed by the trustee; and the remainder was to be distributed in equal parts at the expiration of four years and five years, respectively, from such dates.
10. (a) The beneficiaries of Trust G (see finding 8) were also named as the beneficiaries of Trusts C and E, which contained provisions similar to those of Trust G. Trust C, which was established by the plaintiff on March 13, 1943, gave the beneficiaries a share of the plaintiff’s profits for the fiscal year 1943. Trust E, which was established by the plaintiff on February 29,1944, gave the beneficiaries a share of the plaintiff’s profits for the fiscal year 1944.
(b) The required contributions to Trusts C and E were made by the plaintiff after the establishment of those trusts.
(c) Trusts C and E contained provisions comparable to paragraphs 4 and 5 of Trust G (see paragraphs (d) and (e) of finding 8).. Under such provisions, the principal of Trusts C and E commenced to accrue for the benefit of the beneficiaries on December 1, 1943 and on December 1,1944, respectively, at the rate of one-sixtieth (%0) Per month. At the expiration of one year from December 1, 1943 and from December 1, 1944, one-fifth of the principal of Trusts C and E, respectively, was to be distributed by the trustee; and the remainder was to be distributed in equal parts at the expiration of two, three, four, and five years, respectively, from such dates.
11. (a) Pursuant to the plaintiff’s obligations under the trust agreements previously mentioned, the trustee received *855 the following amounts of the plaintiff’s profits for its fiscal years 1942-1945 as contributions to the various trusts:

(b)The plaintiff made quarterly payments to the trustee from its current profits. The fourth quarterly payment of each fiscal year’s profits was made after the close of such fiscal year, so that during the fiscal year 1945 the plaintiff’s payments to the trustee were as follows:

The final quarterly payments of fiscal 1945 profits were made to the trustee during the fiscal year 1946 in the amounts of $7,800 to Trust F and $4,000 to Trust Gr.
12. (a) The funds contributed by the plaintiff to the trusts were duly invested by the trustee and produced income. All income earned on the principal of each of the trust funds was currently distributed twice each year by the trustee to the trust beneficiaries during the calendar years 1943-1950.
(b) At no time did the plaintiff ever report any of the trust income on its own Federal tax returns.
(c) The trustee filed Federal tax returns for the trusts and taxable periods indicated below:

No return was filed for any trust or for any period other than those indicated above.
(d)No trust ever incurred tax liability, since the trustee currently distributed all trust income.
*856 13. When distributions of principal or income from any of the trusts became due and payable to the beneficiaries named therein, The Hartford-Connecticut Trust Company, trustee, drew checks upon the appropriate trust funds payable to the beneficiaries and delivered such checks to the plaintiff’s treasurer, who verified such checks against his records and then distributed them to the respective beneficiaries.
14. (a) All amounts contributed by the plaintiff to Trusts A, B, C, D, E, F, and G were distributed to the beneficiaries in accordance with the terms of the trusts during the calendar years 1944-1950.
(b) Under the provisions of Trusts A, C, and E, the following amounts of trust principal accrued for the benefit of the individual beneficiaries during the fiscal year 1945 and were required to be distributed to them at the expiration of that year:

Actual distribution of the f oregoing amounts was made to the beneficiaries on December 5, 1945. On December 1, 1944, a similar distribution from Trust C had been made to the beneficiaries in the amount of $3,200, which had accrued for the benefit of the individual beneficiaries during the fiscal year 1944 and which was required to be distributed to them at the expiration of that year.
15.(a) G. E. Goundrey, the plaintiff’s comptroller and head of its Accounting Department during the years 1942-1944, was a participant in the extra-compensation plan referred to in finding 5 and, as such, was named as a beneficiary of Trusts A, B, and D. Late in 1944, Mr. Goundrey resigned from the plaintiff’s employ, effective November 30, 1944. The plaintiff had previously paid the following amounts into Trusts A, B, and D for the benefit of Mr. Goundrey:

(b) G. E. Goundrey participated in the current distribution of trust income from Trusts A, B, and D while he re *857 mained in the plaintiff’s employ; but by his resignation he voluntarily relinquished his interest in, and he did not receive a distribution of, the principal sums contributed by the plaintiff to such trusts for his benefit. Mr. Goundrey was the only beneficiary of the trusts who did not receive his full share of the principal sums which the plaintiff contributed for his benefit. Mr. Goundrey’s share of the trust funds reverted to the remaining beneficiaries of the trusts and was ultimately distributed to them.
16. (a) The total compensation actually received during the fiscal year 1945 by the beneficiaries of Trusts F and G, including distributions from the trusts, was as follows:

(b) The total compensation paid by the plaintiff during the fiscal year 1945 to or for the benefit of the persons named in paragraph (a) of this finding, including contributions to the trusts, was as follows:

(c) The total compensation received by, or paid in behalf of, the beneficiaries of Trusts F and G during the fiscal year *858 1945, including the additional compensation involved in this litigation, was reasonable in amount within the meaning of Section 28 (a) of the Internal Revenue Code of 1939.
17. (a) During the fiscal year that ended on November 30, 1945, the plaintiff’s outstanding capital stock consisted of 80,736 shares of common stock, with a stated value of $12.50 per share. During such fiscal year, the common stock of the plaintiff was traded over-the-counter in Hartford and New Haven, Connecticut. On November 30,1945, the plaintiff’s stock record book disclosed that there were 1,195 stockholders.
(b) The beneficiaries of Trusts A, B, C, D, E, F, and G owned a total of less than 6 percent of the plaintiff’s outstanding stock during the fiscal year 1945.
18. (a) As of February 11, 1942, the plaintiff’s board of directors was composed of the following persons:
J. Harold Williams
Marshall N. Jarvis
_ Raymond E. Baldwin
H. K. W. Welch
Arthur P. Day
Charles T. Treadway
George M. Williams, President
Thomas M. Russell, Jr., Vice President
Such persons continued to serve as directors in succeeding years to and throughout fiscal 1945. On or before April 21, 1944, Carl J. Sherer, plaintiff’s first vice president, was added to the board; and on or before February 14, 1945, Amor P. Smith, plaintiff’s second vice president and secretary, was added to the board.
(b) At all times here material, a majority of the members of plaintiff’s board of directors consisted of persons who were not beneficiaries of the trusts referred to in these findings.
19. The plaintiff, in filing Forms W-2 with the Commissioner of Internal Revenue with respect to the persons who were beneficiaries of the trusts referred to in these findings, did not include as taxable income to such persons the amounts of any contributions to or distributions from the trusts.
20. The beneficiaries of the trusts referred to in these findings did not, for the purposes of their individual income *859 taxes, report any part of the plaintiff’s contributions to the trusts in the taxable periods during which the contributions were made. The beneficiaries did, however, report the amounts distributed to them from the trusts on their individual returns for the taxable periods in which the distributions by the trustee occurred.
21. On its income and declared value excess profits tax return for the fiscal year that ended on November 30,1945, the plaintiff deducted from gross income the amount of $47,200 as additional compensation paid to the beneficiaries of Trusts F and G out of the plaintiff’s profits for such fiscal year. (See finding 11(a).)
22. After an examination of the plaintiff’s income and declared value excess profits tax return for the fiscal year that ended on November 30, 1945, the Commissioner of Internal Revenue disallowed the amount of $47,200 (see finding 21) as a deduction in the fiscal year 1945 or any other year, and allowed no deduction to the plaintiff for the fiscal year 1945 or any other year on account of contributions by the plaintiff to, or distributions by the trustee from, any of the trust funds mentioned in these findings.
23. The plaintiff did not at any time make application to the Commissioner of Internal Revenue for a ruling that any of the trusts referred to in these findings qualified as a tax-exempt employees’ trust under the provisions of Section 165 of the Internal Revenue Code of 1939, or for a ruling as to the applicability of Section 23 (p) of the Internal Revenue Code of 1939 to funds paid into such trusts.

Facts relating to the amount of 'plaintiff’s excess profits credit for fiscal 19f.5

24. (a) For the fiscal year 1945, the plaintiff computed its excess profits credit, for the purpose of determining the excess profits tax imposed by Chapter 2, Subchapter E, of the Internal Revenue Code of 1939, under the invested capital method.
(b) In its tax returns for the fiscal years 1942, 1943, and 1944, the plaintiff had claimed as deductions the following amounts which were due and owing under the agreements creating Trusts A, B, C, D, and E:

*860

None of the aforesaid amounts — all of which, were paid by plaintiff to the trustee named in the respective trust agreements — was included by the plaintiff in its annual earnings or capital account.
(c) In its excess profits tax return for the fiscal year 1944, the plaintiff also claimed as a deduction the amount of $58,864.87 as abnormal net income under section 721 of the Internal Revenue Code of 1939.
25. (a) On December 9, 1948 and April 4, 1951, revenue agents issued their reports of examination of the plaintiff’s Federal tax returns for certain years, including fiscal 1942,' 1943, and 1944. In such reports, the agents proposed to disallow the deduction of the plaintiff’s contributions to the trusts from the profits of such years, in the total amount of $130,400; and also proposed to disallow the deduction of $58,864.87 as abnormal income in the fiscal year 1944. There resulted the following adjustments in the plaintiff’s tax liability for the years 1942-1944:

(b) Under the dates of December 29,1950 and January 4, 1952, the plaintiff protested the adjustments and tax deficiencies proposed by the revenue agents. On September 7, 1951 and July 22,1954, the Appellate Division of the Internal Revenue Service held conferences to hear the plaintiff’s protest.
26. On March 30, 1955, by registered notice, the Commissioner of Internal Revenue disallowed the deductions claimed by the plaintiff on its returns for 1942, 1943, and 1944 as *861 contributions to the trusts and as abnormal income received in 1944, and determined the following deficiencies (or over-assessments) :

Such deficiencies were duly assessed and paid. In so far as such deficiencies resulted from the disallowance of the plaintiff’s contributions to the trusts, it filed claims for refund on August 23,1956, asserting substantially the same grounds as those relied upon in the present litigation.
27. In computing the plaintiff’s invested capital credit for its fiscal year 1945, the Commissioner of Internal Revenue reduced its accumulated earnings and profits at the beginning of such year by the amount of the total net tax deficiency of $164,844.25 determined by him for the years 1942-1944, which thereby reduced the plaintiff’s excess profits credit for such year. Also, in computing such credit, the Commissioner did not increase the plaintiff’s earnings and profits at the beginning of the fiscal year 1945 by the amount of the deductions ($130,400) which the plaintiff had claimed as contributions to the trusts and which the Commissioner had disallowed; nor did he otherwise include in the plaintiff’s invested capital at the beginning of fiscal 1945 such amount of $130,400 or any part thereof.
28. During the fiscal year that ended on November 30,1941, the plaintiff sustained a bad-debt loss on the basis of which it filed a claim for a refund of 1941 income and excess profits taxes. On March 12, 1957, the Commissioner of Internal Revenue allowed such claim to the extent that the plaintiff’s previously determined tax liability for 1941 was reduced in the amount of $47,161.69. The Commissioner of Internal Revenue, however, has made no adjustment of the plaintiff’s invested capital for any of the fiscal years 1941-1945 on account of such tax reduction.
*862 29. (a) The examination of the plaintiff’s tax returns for its fiscal year that ended on November 30, 1945 resulted in a determination by the Commissioner of Internal Revenue of an excess profits tax deficiency in the amount of $19,999.25. The plaintiff duly paid such deficiency on or about September 1, 1955.
(b) On or about February 21,1956, the plaintiff filed with the Commissioner of Internal Revenue a claim for refund of excess profits tax for the fiscal year 1945 in the amount of $64,245.98, or such greater amount as might be legally refundable. The grounds asserted for the allowance of such claim were substantially identical with those asserted in the petition filed with this court on October 15,1956. The plaintiff’s claim was rejected by the Commissioner of Internal Revenue on July 19,1956.
CONCLUSION 03? LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover together with interest thereon as provided by law, with the amount of recovery to be determined pursuant to Rule 38 (c).
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amounts due thereunder, it was ordered on June 24, 1960, (1) that, for its fiscal year ended November 30, 1945, the plaintiff is entitled to judgment for overpayment of excess profits taxes in the amount of $7,811.39, together with the overpayment of deficiency interest thereon in the amount of $4,448.95 or an aggregate overpayment of $12,266.34 with interest on the aggregate sum as provided by law; and (2) that for plaintiff’s fiscal year ended November 30, 1945, there is a deficiency in plaintiff’s income taxes in the amount of $2,377.18, which, together with appropriate interest thereon, may be offset against the aforesaid aggregate amount of overpayment of excess profits taxes.

 Since T.D. 5666 was not promulgated until six years after enactment of the 1942 amendment to §23(p), we do not feel the regulation is entitled to the benefit of the rule of contemporaneous construction. See Royer's, Inc. v. United States, 265 F. 2d 615 (3d Cir. 1959).

 H.R. Rep. No. 2333, 77th Cong., 2d Sess. 50-51 (1942).

 H.R. Rep. No. 1337, 83d Cong., 2d Sess. 42 (1954).

 The Senate changed the House version of § 23 (p) to refer to the employer’s payments to or under stock-bonus, pension, profit-sharing, or annuity plans as “contributions” instead of “compensation.” Reference to them as “contributions”, as something distinct from “compensation”, was in accord with general usage and the provisions of 5 165. See S. Rep. No. 1631, 77th Cong., 2d Sess. 138 (1942).

 We have carefully examined tie cases of Wesley Heat Treating Co. v. Commissioner, Spindler Metal Processing Co. v. Commissioner, and Wesley Steel Treating Co. v. Commissioner, each decided June 17, 1959 (C.A. 7th Cir.), and find they are clearly distinguishable on the facts from the Instant case.

 Added by § 201, Second Revenue Act of 1940, c. 757, 54 Stat. 974.

 Stern Brothers & do., 10 T.C. at 323.

 The reasoning of the Tax Court in the Stern Brothers & Co. case has been followed in Commissioner v. Pacific Affiliate, Inc., 19 T.C. 245 (1952), aff’d per curiam, 224 F. 2d 578 (9th Cir. 1955), cert. denied, 350 U.S. 967 (1956) ; Geo. W. Ultch Lumber Co., 21 T.C. 382 (1953) ; Drybrough v. Commissioner, 238 F. 2d 735 (6th Cir. 1956) ; Estate of Esther M. Stein, 25 T.C. 940 (1956).