Littleton, Judge (Bet.),
delivered the opinion of the court:
Plaintiff, a corporation organized and existing under the laws of the Commonwealth of Kentucky, and engaged in the business of selling electric energy and gas at rates established or approved by the Public Service Commission of Kentucky or by the Federal Power Commission, sues for a refund of excess profits taxes and interest thereon paid for the years 1951, 1952 and 1953. The aggregate amount involved is $88,017.28.
The issue is whether in computing its excess profits tax credits under section 448 of the Internal Revenue Code of 1939, 64 Stat. 1137, 26 U.S.C. (1952 ed.), § 448, plaintiff was entitled to include in its earned surplus account for each year all credits attributable to current profits (less debits attributable to distributions out of such profits), in accordance with the method by which its corporate books of account are maintained. Defendant maintains that under Treasury Regulations 130, section 40.448-2, as amended by T.D. 5983, 1953-1 Cum. Bull. 352, plaintiff is entitled to include only its earned surplus account at the beginning of each year, as recorded in its books of account, without reference to the average earned surplus account for the taxable year. Plaintiff admits that the regulation so provides, but argues that the regulation is inconsistent with section 448 *673 of the 1939 Code. We agree with plaintiff that the regulation goes beyond the statute.
Section 448 provides for an excess profits tax credit to a regulated public utility furnishing electric energy or gas in an amount which includes the utility’s other tax liabilities plus 6% of the sum of average borrowed capital and “adjusted invested capital” for the taxable year. The statute goes on to provide that for a public utility, such as plaintiff, whose books of account are kept in accordance with systems of accounts prescribed by an appropriate regulatory body[1]
the adjusted invested capital for [any taxable] year shall be the sum of the average outstanding common and preferred capital stock accounts and the capital surplus and earned surplus accounts for such taxable year as recorded on such corf orate hooks of account. [Emphasis supplied.]
Plaintiff’s earned surplus accounts for the taxable years in question, “as recorded on [its] corporate books of account,” included current earnings, which became earned surplus at the end of the year. It thus appears that the inclusion of these current earnings in plaintiff’s earned surplus accounts for the purpose of determining its excess profits tax credit is expressly permitted, and indeed required by the statute. The provision permitting regulated public utilities to compute adjusted invested capital according to methods used in their books of account was added by the Senate Finance Committee to the original House draft of the Excess Profits Tax Bill •of 1950 (H.R. 9827,81st Cong., 2d Sess.). The Finance Committee explained its action as follows:
Another major change from the House bill is that providing that most of the utilities may compute their equity capital and retained earnings in the manner provided by their regulating bodies rather than by the means provided for ordinary corporations using the invested capital base. Your Committee believes that it is desirable to allow corporations to compute their rate of return *674 in this manner since this is the basis on which their rate of return is computed for regulatory purposes by other governmental bodies and also because these corporations are more familiar with this type of computation.[2]
We think the legislative history supports the clear meaning of the language of the statute that plaintiff’s current earnings may be included in its earned surplus accounts for excess profits tax credit purposes since they are so included in its corporate books of account for regulatory purposes by other governmental bodies. Congress intended to provide a special excess profits tax credit treatment for regulated public utilities. We must interpret and apply the statute to give effect to the expressed intent of Congress.
Defendant further urges that the failure of the statute to repeat the word “average”, used before “outstanding common and preferred capital stock accounts,” before the words “capital surplus” or “earned surplus” indicates that the statute required the calculation of earned surplus as of the beginning of the taxable year. It is our opinion that this is not a correct inference. The omission of the word “average” merely left the statute neutral on the question, which the statute then provided should be determined by reference to the method used in the corporate books of account. Where such method did not include current earnings, the statute may not in all instances permit their inclusion; but where, as here, such method did include them, the statute requires their inclusion.[3]
Defendant’s principal reliance is on Treasury Regulations 130, § 40.448-2, supra, paragraph (e) (2) (i), which provides in part:
The determination of the adjusted invested capital for any taxable year shall be made without regard to the profits or loss for such taxable year computed in accordance with such [prescribed] system of accounts *675 and without regard to distribution out of the profits for such taxable year so computed.
The terms of this regulation naturally support the action of defendant in this case, but on the facts and circumstances in the case we must hold the regulation to be invalid since it is inconsistent with the statute which it purports to interpret. On its face, the regulation provides for a determination of adjusted invested capital “without regard to the profits or loss computed in accordance with such system of accounts,” while the statute prescribes computation “as recorded on such corporate books of account.” The regulation is thus not an explanation or clarification of the statute; it is an amendment thereof and, as such, was beyond the power of the Department of the Treasury to make. We must therefore refrain from giving effect to the regulation. Helvering v. Credit Alliance Co., 316 U.S. 107, 113; Helvering v. Reynolds, 313 U.S. 428; Russell Manufacturing Co. v. United States, 146 C. Cls. 833; Philadelphia Electric Co. v. United States, 127 C. Cls. 297, 302.
Finally, defendant attempts to argue against the wisdom of the statutory provision, as we have interpreted it. Suffice it to say that this argument is misdirected; the wisdom of taxing policies is for Congress, not this court, to determine. Nor, as a matter of fact, is it within the province of the Treasury Department to alter by regulation those Congressional provisions which it believes or finds unwise. Amendment of statutes is the business of Congress.
Section 448 permits, for the purpose of calculating plaintiff’s excess profits tax credit, the inclusion of current earnings in plaintiff’s earned surplus account, as recorded in its books of account. Plaintiff is therefore entitled to recover the amounts paid as a result of the Commissioner’s erroneous exclusion of current earnings, together with interest as provided by law on the overpayments. The amount of recovery will be determined pursuant to Eule 38 (c).
It is so ordered.
LakamoRe, Judge; MaddeN, Judge; Whitaeer, Judge, and JoNes, Chief Judge, concur.
*676 FINDINGS OF FACT
The court, having considered the evidence, the stipulation of the parties, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff, Louisville Gas and Electric Company, at all times hereinafter mentioned was and is a corporation organized and existing under the laws of the Commonwealth of Kentucky, and having its principal office at 311 West Chestnut Street, Louisville, Kentucky.
2. Plaintiff is and always has been the sole and absolute owner of the claims presented in the petition in this case, and no transfer or assignment of such claims or of any part thereof has ever been made.
3. No action on such claims has been taken before the Congress of the United States, or before any of the departments of the Government, or in any judicial proceedings, except the proceedings within the Internal Kevenue Service hereinafter mentioned.
4. Throughout the years 1951, 1952, and 1953, plaintiff was engaged in the sale of electric energy and gas at rates established or approved by the Public Service Commission of Kentucky or by the Federal Power Commission.
5. June 2, 1952 plaintiff filed with the District Director of Internal Kevenue at Louisville, Kentucky, a corporation income tax return for its taxable year January 1 to December 31, 1951 reflecting an income tax liability of $5,544,082.80, and an excess profits tax liability of $432,-498.17, making a total income and excess profits tax liability for the year of $5,976,580.97. This amount was paid in installments in March, June, September, and December, 1952, the last installment of $896,487.14 being paid December 12, 1952. Following an audit of its 1951 return, an additional assessment was made against plaintiff in the amount of $16,482.02, representing an alleged deficiency for the year of $12,513.87 and interest thereon of $3,968.15. The total amount of this assessment was paid July 9,1957.
6. June 4, 1953 plaintiff filed with the District Director of Internal Kevenue at Louisville, Kentucky, a corpora *677 ■tion income tax return for its taxable year January 1 to December 31, 1952 reflecting an income tax liability of $6,327,730.43 and an excess profits .tax liability of $358,-778.64, making a total income and excess profits tax liability for tbe year of $6,686,509.07. This amount was paid in installments in March, June, September, and December, 1953. Following an audit of its 1952 return, two additional assessments were made against plaintiff, the first in the amount of $24,563.25, representing an alleged deficiency for the year of $19,780.36 and interest thereon of $4,782.89, and the second in the amount of $27,899.79, representing an alleged deficiency for the year of $22,193.77 and interest thereon of $5,706.02. The total amount of the first of these two assessments was paid May 3,1957, and the total amount of the second July 9,1957.
7. May 21, 1954 plaintiff filed with the District Director of Internal Eevenue at Louisville, Kentucky, a corporation income tax return for its taxable year January 1 to December 31, 1953, reflecting an income tax liability of $6,497,759.55 and an excess profits tax liability of $248,050.56, making a total income and excess profits tax liability for the year of $6,745,810.11. This amount was paid in installments in March, June, September and December, 1954. Following an audit of its 1953 return, two additional assessments were made against plaintiff, the first in the amount of $202,457.12, representing an alleged deficiency for the year of $171,312.50 and interest thereon of $31,144.62, and the second in the amount of $32,413.46, representing an alleged deficiency for the year of $27,076.65 and interest thereon of $5,336.81. The total amount of the first of these two assessments was paid May 3,1957, and the total amount of the second July 9,1957.
8. Plaintiff’s gross income (computed without regard to dividends and capital gains or losses, but giving effect to all adjustments made on the audit of its Federal income tax returns) which was derived from the furnishing or sale of electric energy and gas (“utility sales”), that which was derived from all other sources (“other”), and the ratio of the former amount to the sum of the two amounts, were as follows for each of the years 1951,1952, and 1953:
*678 (Hi) Ratio of ({) to (i) Utility sales (ii) Other total
1951_$34, 501, 987. 25 $1,110,713.23 0.9688
1952_ 36, 079, 650. 43 1, 139, 589. 79 . 9694
1953_ 39, 087, 992. 38 1, 300, 043. 66 . 9678
9. The major part of such utility sales during each of the years 1951, 1952, and 1958 were made at rates established or approved by the Public Service Commission of Kentucky, and all the rest of such sales were made at rates established or approved by the Federal Power Commission.
10. Plaintiff’s corporate books of account for each of the years 1951, 1952, and 1953 were maintained in accordance with applicable systems of accounts prescribed by the Federal Power Commission and by the Public Service Commission of Kentucky. The applicable systems prescribed by the Federal Power Commission were the Uniform System of Accounts for Public Utilities and Licensees, 18 C.F.R., sections 101.00-1 to 101.905 inclusive, and the Uniform System of Accounts for Natural Gas Companies, 18 C.F.R., sections 201.00-1 to 201.906 inclusive. The applicable systems prescribed by the Public Service Commission of Kentucky were the same as those prescribed by the Federal Power Commission, except for modifications requiring further subdivisions of certain revenue and maintenance accounts of electric utilities, the Kentucky Commission having adopted and prescribed the uniform systems of the Federal Commission, with such modifications, by orders entered July 12,1937 (In the Matter of a Classification of Accounts for Private Electric Utilities — -Administrative Order No. 18) and December 29, 1939 (In the Matter of a Uniform System of Accounts for Gas Utilities — Administrative Case No. 30).
11. Plaintiff’s excess profits credit for each of the years 1951, 1952, and 1953 was computed under section 448 of the Internal Revenue Code of 1939. For the purposes of such computation, its adjusted invested capital for each such year was determined by the Internal Revenue Service to be the sum of (i) the average outstanding common and preferred capital stock accounts for the year as recorded on the corporate books of account and (ii) the earned surplus account *679 at the beginning of the year as recorded on the corporate books of account.
12. Written agreements under the provisions of section 276(b) of the Internal Revenue Code of 1939 to extend the period within which assessments might be made against plaintiff with respect to the year 1951 were executed as follows:
Date of execution Extending period to—
January 31, 1965_June 30, 1956
February 23, 1956-June 30, 1957
February 14, 1957_June 30, 1958
13. Written agreements under the provisions of section 276(b) of the Internal Revenue Code of 1939 to extend the period within which assessments might be made against plaintiff with respect to the year 1952 were executed as follows:
Date of execution Extending period to—
February 23,1956_June 30, 1957
February 14, 1957-June 30,1958
14. A written agreement under the provisions of section 276(b) of the Internal Revenue Code of 1939 was executed February 14, 1957, to extend to June 30, 1958, the period within which assessments might be made against plaintiff with respect to the year 1953.
15. June 25, 1958, plaintiff filed with the District Director of Internal Revenue at Louisville, Kentucky, a claim for refund, on Form 843, for each of the years 1951, 1952 and 1953, in the amounts of $27,704.03, $27,899.79, and $32,413.46 respectively, plus interest thereon as provided by law. In each of these claims and as a basis thereof plaintiff asserted that it was entitled to an adjusted invested capital for the taxable year, under section 448 of the Internal Revenue Code of 1939, consisting of the sum of (i) the average outstanding common and preferred capital stock accounts for the year as recorded on the corporate books of account and (ii) the average earned surplus account for the year as recorded on the corporate books of account.
16. Defendant has failed and refused to refund or credit to plaintiff the amounts for which the aforesaid claims for refund were filed. Notice of disallowance of each of such *680 claims was sent to plaintiff by registered mail January 8, 1959.
17. Plaintiff’s average outstanding common and preferred capital stock accounts for each of the years 1951,1952, and 1953, as recorded on the corporate books of account, were as follows:
1951-$48,290,131.74
1952-1- 46, 701, 563. 25
1953- 53, 087, 993. 45
18. Plaintiff’s average earned surplus account for each of the years 1951, 1952, and 1953, including profits for the taxable year, less distributions out of such profits, as recorded on the corporate books of account was as follows:
1951-$5,863,323.08
1952- 7,682,225. 05
1953- 9,874, 099. 81
19.With respect to the years 1951-1953, plaintiff’s general ledger reflects the following entries to its earned surplus account: (a) a credit to the account on the last day of each calendar month representing a credit balance transferred from the income account, (b) a debit to the account on the last day of each calendar quarter representing dividends declared on the preferred and common stock, and (c) certain miscellaneous credits and debits to the account on April 30, 1953. The general ledger shows the balance in the earned surplus account at the end of each calendar month as follows:

1951 1952 1953

January-$5, 066, 310. 89 $6, 944,199. 78 $8, 992, 038. 96
February- 5,593,273.56 7,485,323.43 9,612,499.69
March- 5, 253, Oil. 18 7, 106, 683. 62 9, 209, 439. 29
April- 5, 761, 336.13 7, 576, 411. 63 9, 763, 616. 34
May- 6, 170, 472. 54 7, 944,186.19 10, 220, 220. 73
June- 5, 744, 047. 80 7, 449, 985.19 9, 672, 311. 02
July- 6,106, 003. 62 7, 772, 461. 40 10, 082, 823. 02
August- 6, 465, 664. 60 8,141, 169. 76 10, 472, 230. 82
September_ 5, 857, 357. 07 7, 688, 497. 53 9, 899, 281. 03
October- 6,199,117. 59 8, 068, 294. 61 10, 294, 765. 69
November- 6, 646, 677. 91 8, 602, 933. 60 10, 836, 351. 39
December- 6, 448, 884. 72 8, 364, 223.11 10, 503, 016. 39
20.Plaintiff’s earned surplus account at the beginning of the year as recorded on the corporate books of account for the years 1951, 1952, and 1953, was as follows:
1951_$4, 544,323, 31
1952_ 6, 448, 884. 72
1953_ 8, 364,223.11
*681 CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, with interest as provided by law, and judgment will be entered to that effect. The amount of recovery will be determined in further proceedings pursuant to Eule 38 (c).
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due thereunder, it was ordered on April 15, 1960, that judgment for the plaintiff be entered for $88,017.28, with interest thereon as provided by law.

 Plaintiff’s boots oí account are kept in accordance with systems prescribed by the Federal Power Commission and the Public Service Commission •of Kentucky.

 s. Rep. No. 2679, 81st Cong., 2d Sess., pp. 30-31.

 It may be noted in this connection that the Treasury’s regulation, Treasury Regulations 130, § 40.448-2, supra, in paragraph (e) (2) includes the word “average” also before “capital and earned surplus accounts.” Defendant argues that the Commissioner thereby recognized that Congress did intend to permit an averaging of capital and earned surplus, but only when such accounts were increased or decreased as the result of transactions not related to current earnings or distributions, we are unable to find any indication in the statute that Congress intended to provide such a distinction.